THE PEOPLE OF THE STATE OF NEW YORK ex rel. CECELIA B. O'REILLY, Appellant, *v.* THE COMMON COUNCIL OF THE CITY OF KINGSTON et al., Respondents.

KINGSTON (CITY OF) — UNAUTHORIZED SPECIAL ASSESSMENT FOR IMPROVEMENTS. Where the work of grading three streets and laying one sewer therein in the city of Kingston, although directed by four separate ordinances, each providing that the improvement should be done by contract and a portion of the expense assessed upon the property benefited, was let for a single sum under one contract against the protest of a property owner who owned a majority of lots upon two of the streets, and no lot upon the third, and upon the completion of the work the common

1907.] People ex rel. O'Reilly v. Common Council. 67

N. Y. Rep.]                    Statement of case.

council, acting upon and adopting the estimate of the contractor as to the cost of each improvement, divided the gross cost into four items and directed a special assessment for each improvement accordingly, which was made and duly objected to by such property owner, the assessment against her property was erroneous, since under the charter (L. 1896, ch. 747, § 147; L. 1900, ch. 168, § 151), which requires that the cost of each improvement should be fixed by competitive bidding, and the portion of such cost as thus determined, should, in the case of grading, be assessed upon "property fronting on" the streets, and in the case of a sewer, upon "the property immediately benefited thereby," the method of ascertaining the cost of each improvement was entirely unauthorized. By the consolidation of four improvements into one, the expense of each could not be determined by its actual cost, but was estimated merely. The cost of constructing a sewer, assessable upon one principle, was commingled with the cost of grading assessable upon a different principle. The cost of grading a street upon which the complainant had no property was commingled with the cost of grading two streets upon which she had property. The assessment, therefore, must be annulled.

*People ex rel. O'Reilly* v. *Common Council*, 114 App. Div. 326, reversed.

(Argued May 20, 1907; decided June 4, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered August 8, 1906, which vacated a writ of certiorari to review the proceedings of the defendants in levying an assessment on relator's real property and dismissed the proceedings.

Lavan street in the city of Kingston runs northerly from Staples street to Andrew street. From the point of intersection Andrew street continues westerly to Mary's avenue, which extends thence in a northerly direction for more than seven hundred feet to a point not specified. This proceeding was instituted to review a special assessment against property of the relator for grading portions of the three streets named and constructing a sewer through the same. The return shows the following facts among others: On the 4th of September, 1903, an ordinance was adopted by the common council and approved by the mayor to grade that portion of Lavan street lying between Staples and Andrew streets. On the 21st of September, 1903, a like ordinance was adopted to grade Andrew street from Broadway, which is the first street east of Lavan street, to Mary's avenue and on the same day by a

separate ordinance provision was made for grading Mary's avenue from Andrew street to a point 700 feet northerly. On the same day an independent ordinance directed that a sewer be constructed through Lavan street from Brewster to Andrew, thence through Andrew to Mary's avenue and thence through Mary's avenue to a point 700 feet northerly. Each ordinance provided that the work therein specified should be done by contract and " that twenty-five per cent of the cost of the work be paid by a general tax upon the city and that seventy-five per cent of such cost and expense be defrayed by special assessment" upon the property benefited.

Plans and specifications were made by the city engineer and on the 2nd of October, 1903, the common council adopted the same and directed the city clerk to advertise for bids for doing the work and furnishing the materials required to grade the three streets and construct the sewer therein. Bids were called for and made in bulk " for grading and regulating Lavan Street, Andrew Street and a portion of Mary's Avenue and for constructing a sewer in portions of the same streets." John O'Reilly was the lowest bidder and the contract was awarded to him for the sum of $9,929, the amount of his bid, which " did not state the cost of the grading or sewering separately each street, but was made in a lump sum." Before the contract was awarded the relator filed a protest in writing with the common council and insisted, among other things, that the proposed contract would be illegal and " that there can be no equality in the assessment if Lavan, Andrew Streets and Mary's Avenue are graded and sewered" under one contract.

The contractor completed his contract and was paid in full by the city prior to the 21st of October, 1904, when the common council adopted the following resolution : " Resolved, that $4,124.63, being 75% of the cost of constructing said sewers in Lavan Street, Andrew Street and Mary's Avenue, be paid by special assessment against the property immediately benefited by the construction of said sewers: that $1,371,

being 75% of the cost of grading said Andrew Street, be paid by special assessment on the property fronting on said improvement; that $768.34, being 75% of the cost of grading said Lavan Street, be paid by special assessment on the property fronting on said improvement; that $1,827.36, being 75% of the cost of grading said Mary's Avenue, be paid by special assessment on the property fronting on the said improvement;" and it was further thereby resolved that "the assessor be and he hereby is directed to make such assessment."

In compliance with the direction of the common council, the assessor made the assessment. He determined the district within which the property benefited was located; caused the city engineer to make the necessary maps and "made four certificates of assessment, one for the expenses of grading Lavan Street, one for the expenses of grading Andrew Street, one for the expenses of grading Mary's Avenue and one for the expenses of constructing a sewer in said streets and avenue." The "expenses" thus referred to were those fixed by the resolution last named. The assessor in his return certified that he had made "a just and equitable assessment of the cost and expenses of said improvements against the owners and occupants of the land deemed to be benefited, including the lands of the petitioner herein, and did assess each parcel in due form of law in proportion to the benefit, which in my judgment had been derived from the said improvements, and did enter in each of said certificates a brief description of the parcel assessed and the sums assessed against it, and in so making said assessments I assessed the cost and expenses of grading Lavan Street only on the property fronting on such improvement; the cost and expense of grading Andrew Street only on the property fronting on such improvement; the cost and expense of grading Andrew Street only on the property fronting on such improvement; the cost and expense of grading Mary's avenue only on the property fronting on such improvement; and the cost and expense of constructing said sewer in said streets and avenue on the property immediately benefited thereby."

After his certificates of assessment had been completed notice was given that they might be examined and objections made thereto.    The relator filed written objections and among others the following: That the assessment was not made according to law or the provisions of the charter; "that three distinct ordinances calling for the grading of the said three streets separately were passed at three separate meetings of the common council, and notwithstanding such ordinances the grading and sewering of said streets were let in one lump sum without calling for bids for the three separate streets as directed by said ordinances and by reason thereof the said assessment is inequitable, unjust and unfair to the undersigned, as the character of said streets and the soil thereof and the cost of like improvements thereof would and did differ in the cost. That all lots have not been assessed in proportion to benefit received; * * * that the sum for which this assessment has been levied is not the actual cost for such work nor the amount paid therefor."    Although the relator repeated her objections before the common council the assessment was confirmed by that body and a warrant for the collection of the taxes was issued.    The relator owned no lots on Lavan street, but she owned a majority of the lots on the other streets.

The common council separated the cost of the four improvements by dividing the sum paid to the contractor in bulk as follows: "The cost of the construction of said sewers in said Lavan Street, Andrew Street, and Mary's Avenue is the sum of $5,499.50.    The cost of grading said Lavan Street is the sum of $1,024.45.    The cost of grading said Andrew Street is the sum of $1,827.99.    The cost of grading said Mary's Avenue is the sum of $2,436.46."    In thus separating the cost of all the work into four items, one for each of the improvements, the common council acted upon a statement of the contractor furnished to the city engineer pursuant to their direction, "showing the work for each of said streets and avenue separately which he considered necessary to be done in order to comply with" his contract.    They had in addition thereto the plans, specifications and estimates made by the city engineer.

The Appellate Division dismissed the writ of certiorari and confirmed the assessment, one of the justices dissenting, and the relator appealed to this court.

*John G. Van Etten* for appellant.   A statute giving power to charge the property of individuals with the expense of local improvements must be strictly pursued, and any departure in substance from the formula prescribed by the statute vitiates the proceedings.   (*Matter of Klock,* 30 App. Div. 24, 29; *Archer* v. *City of Mt. Vernon,* 63 App. Div. 286.)   The grading of each of said streets was authorized by a separate ordinance for each street, and there was a separate ordinance for the sewering of the three streets, and each ordinance provided that the particular work therein mentioned should be let to the lowest responsible bidder, and the cost of that particular improvement assessed against the property benefited and paid for only from the funds raised for that particular improvement; and the consolidation of all these separate improvements into one contract for one sum was not as provided by said ordinances, and was in contravention of the city charter, and the assessment therefor unauthorized and void.   (*Merritt* v. *Vil. of Portchester,* 71 N. Y. 309; *Stebbins* v. *Kay,* 123 N. Y. 35; *Newell* v. *Wheeler,* 48 N. Y. 486; *May* v. *Traphagen,* 139 N. Y. 478; *People ex rel. Knox* v. *Yonkers,* 39 Barb. 266.)

*Philip Elting* for respondents.   The common council had the right to unite the several ordinances relating to grading and sewer and determine the expense for each improvement. (*Murphy* v. *Peoria,* 119 Ill. 509; *Springfield* v. *Green,* 120 Ill. 269; 27 Am. & Eng. Ency. of Law [2d ed.], 134; McQuillin on Mun. Ord. § 537.)

Vann, J.   The charter of the city of Kingston provides that " the common council may cause any street   *   *   * or any part thereof not previously graded,   *   *   *   to be graded   *   *   *   and determine what part, if any, not exceeding twenty-five per centum of the expense thereof shall

be paid by general tax upon the city and what part of such expense, * * * shall be paid by special assessment on the property *fronting on such improvement.* The common council may also make and construct * * * sewers, and in like manner determine the proportio..s to be paid by general tax and by special assessment against the property *immediately benefited thereby.* If the ordinance for any of said improvements shall provide for assessing the whole or any part of such expense by special assessment, the assessor, upon notice from the common council so to do, shall forthwith proceed to determine the district within which the property benefited by said improvement is located; cause the city engineer to make the necessary map therefor; make a certificate of such special assessment * * * and make a just and equitable assessment of the costs and expenses of such improvement as audited by the common council against the owners or occupants of the lands deemed to be benefited, assessing each parcel in proportion to the benefit which, in his judgment, has been derived from the said improvement, and shall enter in such certificate a brief description of the parcel assessed and the sum assessed against it. * * *" (L. 1896, ch. 747, § 147.) "All improvements to be paid for by special assessment shall be by contract let to the lowest responsible bidder and shall be paid for only from the funds raised, levied and collected for such improvements," but bonds or notes may be issued in anticipation of the collection of the special assessment. (L. 1900, ch. 168, § 151.)

While the assessment for grading is to be made "on the property fronting on such improvement," the assessment for constructing a sewer is to be made "against the property immediately benefited thereby," which may include "other property than such as fronts on the improvement." The common council had the power, and in this case they exercised it, to determine that twenty-five per centum "of the expense" of the several improvements should be paid by general tax and the remainder by special assessment. . The assessor is required to assess "the costs and expenses of such improve-

ment" against the owners of the land deemed benefited, and "all improvements to be paid for by special assessment shall be by contract, let to the lowest responsible bidder."

As we read the charter the cost of each improvement can be ascertained in but one way, and that is by the amount of the contract as awarded after competitive bidding. The contract price is the exact measure of the cost, and resort to any other method of getting at it would be attended with more or less uncertainty. In this instance the common council arbitrarily divided the cost of the four improvements and directed the assessor to make the assessment for each accordingly. The relator had no interest in grading Lavan street, for she owned no property thereon. As the cost of grading is to be assessed against the property fronting on the street graded, she was concerned only with the cost of grading Andrew and Mary's streets. The common council, instead of ascertaining the cost of grading those streets through the method provided by the charter, resorted to an unauthorized method, which may have cast a part of the expense of grading Lavan street upon the property of the relator. They did not resort wholly to official sources for their information when they divided the lump sum which the four improvements cost into four items, one for each improvement. They acted on and adopted the estimate of the contractor who made it without official responsibility. While we have no reason to believe that he acted unfairly, the principle upon which they proceeded is wrong and cannot be overlooked, for in another case it might result in injustice, and, indeed, we cannot say that it has not in the case before us.

By separate ordinances four independent improvements were ordered, and subsequently they were consolidated into one, so that the expense of each could not be determined by its actual cost in the method provided by the charter. What should be definite and certain has been merely estimated and the estimate was made by a private citizen, acting without the sanction of an oath. The cost of constructing a sewer, which is assessed upon one principle, has been commingled with the

cost of grading, which is assessed upon a different principle. The cost of grading a street upon which the relator had no property has been commingled with the cost of grading two streets upon which she had property. The provisions of the charter have been disregarded notwithstanding the timely notice of the relator and the assessment made upon an erroneous principle, which gives rise to a conclusive presumption of injury. " The power to levy assessments exists only where it is distinctly conferred by legislative authority. Where the mode is prescribed in which the power is to be exercised, it must be followed. The mode in such cases constitutes an essential element in the proceeding. * * * It is not for the courts to say that the same protection may be obtained by other means. ' That which the legislature has directed, courts cannot declare immaterial.' No presumption will take the place of the act required." (*Stebbins* v. *Kay*, 123 N. Y. 31, 35 ; *Merritt* v. *Village of Port Chester*, 71 N. Y. 309, 312.)

We agree with the learned justice who dissented below in saying that the method adopted " was an entire departure from the scheme of the statute, which requires the cost of the improvement to be fixed by competitive bidding and then that the portion of such cost as thus determined which is to be paid by special assessment, shall in the case of grading be assessed against one class of property and in case of a sewer be assessed against another class of property."

We are, therefore, constrained to reverse the order of the Appellate Division and set aside the assessment. While the law requires this adjudication, the result will be unjust if the relator should escape taxation altogether, for her property upon Andrew street and Mary's avenue is apparently benefited more than all the other property upon those streets taken together. The city, however, may have a remedy, for if the legislature in the first place could have authorized every thing to be done as in fact it has been done, a curative act may be passed which will prevent the injustice of throwing the entire expense of these useful improvements upon the city at large. (*Smith* v. *City of Buffalo*, 159 N. Y. 427, 432 ;

*Van Deventer* v. *Long Island City,* 139 N. Y. 133, 136; *Spencer* v. *Merchant,* 125 U. S. 345; 100 N. Y. 585, 587.)

The order of the Appellate Division should be reversed and the assessment against the property of the relator annulled, with costs in both courts.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Haight, Hiscock and Chase, JJ., concur.

Ordered accordingly.