HELWIG v. CITY OF GLOVERSVILLE.

(Supreme Court, Fulton County, at Chambers.   April 20, 1916.)

1. MUNICIPAL CORPORATIONS ⊜⟿331—PUBLIC IMPROVEMENTS—CONTRACTS—
   ADVERTISEMENT FOR BIDS.
   A charter provision that bids for paving improvements shall be advertised in newspapers named and for times directed by the council is violated by a paving resolution directing the engineer and city clerk to advertise the bids as seems best, and advertisement pursuant thereto.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 856, 857;  Dec. Dig. ⊜⟿331.]

2. MUNICIPAL CORPORATIONS ⊜⟿333—PUBLIC IMPROVEMENTS—CONTRACTS—
   DEPOSIT BY BIDDER.
   Where the resolution of determination to pave required a bidder's deposit of $1,500, specifications and published notice requiring $10,000 deposit are in violation of law.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 859;  Dec. Dig. ⊜⟿333.]

3. MUNICIPAL CORPORATIONS ⊜⟿339(2)—PUBLIC IMPROVEMENTS—CONTRACTS—
   ALTERATION.
   Where the paving resolution and specifications demanded a certain pavement, and bids were received thereon, a resolution awarding the contract for paving, partly with the specified pavement and partly with another pavement, is unauthorized.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 870;  Dec. Dig. ⊜⟿339(2).]

4. MUNICIPAL CORPORATIONS ⊜⟿444—PUBLIC IMPROVEMENTS—ASSESSMENTS—
   STATUTES.
   Where provisions of law as to advertising for bids, deposits accompanying bids, and lowest bidder as to a paving contract are violated, the assessment for the expense of the pavement is vitiated.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1064, 1069;  Dec. Dig. ⊜⟿444.]

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MUNICIPAL CORPORATIONS ⬦⟿446—PUBLIC IMPROVEMENTS—ASSESSMENTS.
If a contract for pavement is legally awarded, a poor pavement, or a poor job in laying it, in the absence of fraud between the council and contractors, is no ground for opposing an assessment to meet its cost.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1066, 1067; Dec. Dig. ⬦⟿446.]

Action by Albert Helwig against the City of Gloversville to vacate an assessment. Vacated.

Jeremiah Wood, of New York City (William A. MacDonald, of Gloversville, of counsel), for plaintiff.
Wesley H. Maider, of Gloversville, for defendant.

BORST, J. The plaintiff brings this action to have vacated a special assessment levied against his property by the city of Gloversville for $495.40, of which $12.40 is for interest, for paving Kingsboro avenue in that city. His contention is that the proceedings of the common council of the city leading up to the levy of the assessment deviated from the city charter in such important particulars as to vitiate it.

In the spring of 1912, the common council of the city, by resolution duly passed, determined to lay pavement on six of the city streets, including the one in question. The kind of pavement was not determined upon, different kinds being named for the different streets in the resolutions determining to pave, and in some cases, as on Kingsboro avenue, different kinds of pavement were named in the alternative. Complaint is made against this leaving the matter of selection of pavement open in the preliminary resolution to pave, but this I think is without merit. In fact, the determination to pave was the important act, and it was both wise and prudent to leave the selection of the pavement until the cost of various suitable kinds could be learned from the bidding by contractors or otherwise. The total cost of the pavement on Kingsboro avenue was upwards of $33,000, and for all the streets paved, with sewers and curbing, approximately $77,000. In this opinion, only three of the grounds urged against the validity of the assessment made against plaintiff's property will be considered. Numerous other reasons for vacating the assessment are given by plaintiff's counsel, but I do not consider them of sufficient merit to impair the validity of the assessment.

[1] The charter of the city provides that bids for paving improvements "shall be advertised in the official newspapers of the said city and in such other newspapers as the common council may name for such time as it may direct." At a meeting of the common council, plans and specifications, prepared by the city engineer by its direction for the paving in question, were adopted and the following resolution was passed:

"That the engineer and city clerk be directed to advertise in the official newspapers of the city and in such other ways as seem best that the bids will be received for paving and construction of storm sewers by the city clerk and will be opened at the meeting of the common council May 8, 1912."

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Pursuant to this resolution, the engineer and city clerk, over their names, advertised for bids for paving the streets in question in the official city papers by three insertions therein, referring in the published notices to the plans and specifications on file in the city clerk's office. Other than this there was no notice to bidders published.

The provisions of the city charter required the common council of the city to advertise for bids. Their judgment and discretion was to be exercised, and not that of the engineer and clerk, as to the extent of the advertisement and the number of times it should be published in the official papers and in other papers. The charter wisely delegates this judgment and discretion to the council, and it could not be abrogated. It was wisely provided that the work was to be let to the lowest bidder after advertisement by the common council, and the extent of the advertising for bidders, that there might be no wrongdoing by irresponsible parties, was delegated to the common council, the members of which are answerable to their constituency for the faithful performance of their trust. It may well be that the notice published and the extent of the publication was as full and complete as though it had been done by the common council, yet those called upon to pay for the improvement did not have the benefit of the judgment of those charged with the duty of the publication by the statute. The test is, not that no wrong followed the mistaken acts of the council in the present case, but that it might have followed because of their deviation from the statute, designed specifically and in specific terms to protect those liable to meet the expenses of laying the pavement.

In all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to this judgment or discretion, the authority is purely personal and cannot be delegated to another, unless there be a special power of substitution. Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105; Lyons v. Jerome, 26 Wend. 485, 37 Am. Dec. 271; Powell v. Tuttle, 3 N. Y. 396; State v. City of Paterson, 34 N. J. Law, 163. Dillon on Municipal Corporations, vol. 1, § 244 (5th Ed.), lays down the rule that:

"The principle is a plain one that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others."

There was no resolution by the common council approving the action of the engineer and clerk in the advertising for bids. It is argued that the acceptance of the bids by the common council ratified the acts of the engineer and clerk in advertising, but this is a strained conclusion to be reached. Further, the council could not ratify something which was required to be done only by their discretion and judgment, and which had been done without it. Hydes v. Joyes, 4 Bush (Ky.) 464, 96 Am. Dec. 311; Pilots v. Vanderbilt, 25 N. Y. Super. Ct. 367, 380; State v. Jersey City, 25 N. J. Law, 309. The court cannot say the plaintiff was protected by the notice given by the engineer and clerk, for that which the Legislature has directed to be done by one party for the protection of a taxpayer a court cannot declare may be legally done by another party. People v. Common Council, 189 N. Y.

66, 74, 81 N. E. 557; Matter of Pennie, 108 N. Y. 364, 15 N. E. 611; Merritt v. Village of·Port Chester, 71 N. Y. 309, 27 Am. Rep. 47.

[2] The invalidity of the assessment, however, does not rest alone upon the failure of the council to advertise for bidders as required by the statute. The determination to pave was by separate resolution for· each street, and by each such resolution it was resolved that 25 per cent. of the expense of the improvement should be paid by the city at large, and the remainder assessed by special assessment upon the property benefited; that the pavement should be laid according to specifications thereafter to be adopted and filed in the city clerk's office and the work be let by contract, in accordance with section 105 of the charter, which required it to be let to the lowest bidder after advertisement; and that each bid be accompanied with a deposit of $1,500 in cash or a New York draft or a certified check upon a local bank for that amount, payable to the order of the city chamberlain, as security that the bidder would accept and execute a contract to do the work if it was awarded to him. Subsequently the city engineer presented plans and specifications, which were adopted by the common council, for each of the streets separately, and which also provided that there should be separate bids for each street, and that "no bid will be accepted by the common council unless accompanied by $10,000 in cash or New York draft for $10,000, made payable to the chamberlain of the city of Gloversville," to insure that the bidder would enter into a contract for the work if it was awarded to him, and if it was not awarded to him the money or draft to be returned. The notice published by the engineer and city clerk contained the same provision for a deposit of cash or draft as contained in the plans and specifications, except it also provided for a certified check upon a local bank.

It will be noted that each bidder, whether he bid upon one street, which he was permitted to do under the plans and specifications, or bid on all of the streets, was required to deposit $10,000; whereas, by the original resolution determining to pave, a deposit of $1,500 was all that was required for a bid upon any one street. The remarkable change from requiring a deposit of $1,500 as security by each bidder, who elected to bid for one street, to $10,000, will be appreciated when it is stated that the entire cost for paving Grand street with the extras was $7,142.91, West street $5,409.37, West Fulton street $3,203.39, and Spring street $10,911.67, so that the small contractor, who elected to bid, for instance, on West Fulton street, was required to deposit $10,000, when the total amount that he could receive on the performance of the contract was but $3,203.39; and, further, the plans and specifications provided that if the bidder refused to enter into a contract for the doing of $3,200 worth of work, and had deposited the $10,000, the latter amount became the property of the city by the terms of the plans and specifications. The direct result of such a requirement as the deposit of $10,000 to secure the job to pave any one of the streets, at least other than Kingsboro avenue, was to prevent bidding.

This almost prohibitive amount of security required to bid was contrary to the spirit and intent of the charter and directly violative

of its provisions, for it, to a certain degree, at least, limited competitive bidding. The statute was framed in the interest of the taxpayer, and to give the greatest opportunity for competition in bidding. We have here, however, requirements which stifled bidding. This procedure is further accentuated, when taken in connection with the manner in which the contract was awarded.

[3] The resolution determining to pave Kingsboro avenue and the other streets provided that it was necessary and expedient that the avenue be paved with creosoted wooden block, or vitrified brick, or *bituminous bound pavement,* each on six-inch concrete foundation, according to plans and specifications to be prepared by the city engineer. These were prepared and subsequently adopted by the common council, and required one of the three kinds of pavement specified. As the brick and wood block pavement were not accepted, nor the bids upon the same, further reference will not be made to them. There were four bidders for the work. The bid determined to be the lowest for the pavement on Kingsboro avenue for bituminous bound pavement with a six-inch concrete foundation was $2.49 per square yard. Accompanying this bid was the following letter:

"We hereby propose to furnish Dollarway pavement in accordance with inclosed specifications on Grand and such other streets as your honorable body may select for paving with a bituminous wearing surface at $1.50 per square yard."

By resolution the contract for paving Kingsboro avenue was awarded for a part of the street with bitulithic pavement at $2.49 per square yard, and the remainder with concrete with bituminous wearing surface pavement at $1.50 per square yard, and a contract was entered into with the successful bidder for paving the street with these pavements and at the prices stated. Later the contract was changed, and the paving for the entire surface of Kingsboro avenue was so changed that the entire street was paved with concrete pavement with bituminous wearing surface at $1.50 per square yard.

The specifications provided that that street should be paved with a *bituminous bound pavement* on six-inch concrete foundation, and for which the successful bidder bid $2.49 per square yard; but he finally got the contract to lay a pavement on that street with a bituminous wearing surface at $1.50 per square yard. There was no specification for the paving of Kingsboro avenue with the kind of pavement contracted for and laid, nor were there any bids received for the paving of that street with that kind of pavement, unless it was contained in the letter before noted. Kingsboro avenue, as we have seen, cost approximately one-half of the entire pavement laid in the city at the time in question. There was no specification permitting Kingsboro avenue to be paved with a pavement with a bituminous wearing surface, but the requirement of the specification was for a *bituminous bound pavement* on six-inch concrete foundation. While the bituminous wearing surface was laid, apparently on a six-inch concrete surface, yet the difference between that and the pavement specified in the specifications is well illustrated by the bids of the successful bidder, who bid $2.49 for the laying of the bituminous bound pavement

and took the contract without advertising or competitive bidding therefor at $1.50 for bituminous wearing surface. This clearly indicates a substantial difference between the two kinds of pavements, and which difference is further supported by the evidence.

[4] The specifications, to which the bidders for the work of paving Kingsboro avenue were directed to look for the kinds of pavement they were to bid upon, contained no reference to the kind contracted for by the council and laid on that street. Neither was any reference made in any of the proceedings of the council to the pavement contracted for and laid until it was determined after the bidding to use that pavement. If the city had intended to pave the street with that pavement, and had advertised for bidders for that purpose, it is quite possible that some bidder other than those to whom the contract was let would have obtained the contract and at a much lower price than that paid. The statute requiring competitive bidding after notice was intended to secure the lowest price and prevent the possibility of private interests overreaching the public good. The city officials cast aside their specifications and the bids made thereon, and by private agreement with contractors contracted for and laid a pavement in direct violation of the salutary principles of the law plainly stated in the city charter. This vitiates the assessment levied for the expense of this pavement.

[5] Shortly after this pavement was laid, large portions of the top binder peeled off, and the pavement required resurfacing, and of this the plaintiff also complains. If the contract for the pavement, however, was legally awarded, a poor pavement, or a poor job in laying it, in the absence of fraud between the council and the contractors, would furnish no ground for opposing an assessment laid to meet its cost.

Plaintiff's assessment must be vacated, and a draft decision may be submitted in accordance with this opinion.