CECELIA B. O'REILLY, Appellant, *v.* THE CITY OF KINGSTON, Respondent.

Third Department, November 15, 1916.

Municipal corporation — constitutional law — assessments for local improvements — Constitution, article 8, section 10, limiting indebtedness of city, construed — estoppel.

Where a city authorized local improvements, directed that they be made by contract and that twenty-five per cent of the cost of the work be paid by a general tax upon the city, and that seventy-five per cent be defrayed by special assessment upon the property benefited, and the son of the owner of the property principally benefited secured the contract for the work and was paid therefor, his mother being his surety, said contract between the city, the owner of the property and her son

did not create a debt within the meaning of article 8, section 10, of the State Constitution, prohibiting a city from becoming indebted in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of its real estate, and she cannot be heard, in a suit in equity to remove a cloud upon her title arising from the assessment for the improvements, to allege the invalidity of the contract made with the city, the benefits of which have been received in the manner contemplated when she made the contract.

Under such circumstances, the owner and her son were effectually estopped from claiming that the city had no power to make the contract.

The "debt" referred to in the Constitution is one which mortgages the future and which must be paid by taxation in future years. It does not relate to obligations incurred in the ordinary way, which are to be paid by the current tax levy or presently charged upon the property owners benefited.

Appeal by the plaintiff, Cecelia B. O'Reilly, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Ulster on the 24th day of November, 1915, dismissing the complaint upon the decision of the court after a trial before the court, a jury having been waived.

*N. Frank O'Reilly* [*John G. Van Etten* of counsel], for the appellant.

*William D. Brinnier,* for the respondent.

Kellogg, P. J.:

This action was brought to remove a cloud upon the plaintiff's title to certain real estate, arising from an assessment made by the city for local improvements. The defendant's council authorized the improvements and directed that they be made by contract and that twenty-five per cent of the cost of the work be paid by a general tax upon the city and that seventy-five per cent be defrayed by special assessment upon the property benefited. Pursuant to public notice bids were received and the plaintiff's son was the successful bidder and received a contract for the work upon his furnishing a bond with satisfactory surety conditioned for the faithful performance of the work. Plaintiff became the surety for her son and her bond was accepted and the contract awarded him and he performed the work and received payment therefor. The city

authorities levied the assessment and the plaintiff, by certiorari, claimed that the assessment against her property was invalid on account of certain irregularities in the manner in which it was levied. In *People ex rel. O'Reilly* v. *Common Council* (189 N. Y. 66) the assessment was vacated, the court saying (at p. 74): "We are, therefore, constrained to reverse the order of the Appellate Division and set aside the assessment. While the law requires this adjudication, the result will be unjust if the relator should escape taxation altogether, for her property upon Andrew street and Mary's avenue is apparently benefited more than all the other property upon those streets taken together. The city, however, may have a remedy, for if the Legislature in the first place could have authorized every thing to be done as in fact it has been done, a curative act may be passed which will prevent the injustice of throwing the entire expense of these useful improvements upon the city at large."

Thereafter, by chapter 705 of the Laws of 1907, the curative act suggested by the Court of Appeals was passed and a reassessment was made to cover the amount to be paid by the property owners for the improvements, and the plaintiff now brings this action asking that the said assessment be declared invalid as a cloud upon her title. In the former action the fact that she was the surety upon the bond of the son, which enabled him to obtain the contract, was of no importance, for the assessment to be valid must be made pursuant to the forms of law. But here the plaintiff's property has been benefited by the work; her son had the benefit of the contract and obtained that benefit by virtue of the bond, and she now, in a court of equity, seeks to avoid payment for the benefits received by her on the ground that the city had no right to have the work performed. She contends that at the time the contract was made the indebtedness of the city was more than ten per cent of the assessed valuation of the real property and that, therefore, the city had no real power to contract a further debt. It would be a reproach to our law if the son, the contractor, could avoid a tax levied against his property on account of the moneys paid to him under the contract. His property would be benefited by it and he would have the profits from

performing the contract and would escape liability upon the ground that the city was without power to make the contract. Evidently the mother, his surety, is in no better position to raise that question than her son would be. They are effectually stopped from the claim that the city had no power to make the contract.

In a technical sense it is true that if a city buys a broom to sweep out the mayor's office, or hose for the engine house, a liability is incurred, as the vendor is required to submit his bill for audit after the goods are furnished and the city receives the goods before the money is paid. But the constitutional provision must have a sane and reasonable interpretation. It was not made to tie up a city and render it impossible for it to carry on its ordinary functions, but was intended to make the people who incur the debt pay it and to prevent the mortgaging of the future for present enjoyments. The resolution in question clearly contemplates that no permanent indebtedness of over ten per cent of the real estate valuation is to exist against the city. Twenty-five per cent of the cost was to go into the next tax levy, the balance to be assessed against the property. The future was not to be mortgaged in any way.

Section 10 of article 8 of the Constitution, which prohibits a city from becoming indebted in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of its real estate subject to taxation, provides: "This section shall not be construed to prevent the issuing of certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes for amounts actually contained, or to be contained in the taxes for the year when such certificate or revenue bonds are issued and payable out of such taxes." It then provides that if the certificates of indebtedness or revenue bonds are not retired within five years they shall thereafter be treated, for the purposes of the section, as a part of the indebtedness. The fair inference from this provision is that the section does not apply to obligations incurred which are to be met by the current tax levy. The fact that twenty-five per cent of the cost of the work was to be paid by the current tax levy and the balance assessed against the property shows that no debt was created or intended to be created within the mean-

ing of the constitutional provision. The debt referred to in the Constitution is one which mortgages the future and which must be paid by taxation in future years. It does not relate to obligations incurred in the ordinary way which are to be paid by the current tax levy or presently charged upon the property owners benefited. If an obligation is to be met by funds on hand or by a tax in the process of collection or about to be collected, it is not within the constitutional provision. The improvement was made; the plaintiff's property was benefited and the money was actually paid to her son at her request and pursuant to her bond for the faithful performance by him of his contract with the city.

We, therefore, conclude that the contract made between the city, the plaintiff and her son for these improvements did not create a debt within the constitutional provision and that the plaintiff cannot now be heard to allege the invalidity of the contract made with the city, the benefits of which have been received in the manner which she contemplated when she made the contract. The judgment should, therefore, be affirmed, with costs.

Judgment unanimously affirmed, with costs; COCHRANE, J., not sitting.