WILLIAM C. HEATON and Another, Doing Business under the Firm Name and Style of W. C. HEATON AND COMPANY, Respondents, v. CITY OF COHOES, Appellant.

Third Department, March 13, 1935.

*John A. Brady, Corporation Counsel,* for the appellant.

*Wiswall, Walton, Wood & MacAffer* [*Kenneth S. MacAffer* and *A. Kendall Roberts* of counsel], for the respondents.

HEFFERNAN, J. The city of Cohoes was organized and now exists as a municipal corporation by virtue of chapter 130 of the Laws of 1915 and acts amendatory thereof and supplemental thereto. In 1929 its financial affairs were in a chaotic condition. It had no funds to meet current expenses. Doubt was expressed as to its authority to borrow money, since it was asserted that its debt limit had been exceeded in violation of section 10 of article 8 of the New York State Constitution. The State Comptroller was engaged in examining the accounts of the city's fiscal officers.

The mayor of the city apparently regarded the investigation which the Comptroller was making as political in its nature. He decided to have an inspection made by auditors of his own selection. For this purpose he conferred with a representative of respondents, who are certified public accountants. Respondents agreed to make the examination which the mayor desired for the sum of $4,000 and expenses. This proposal was satisfactory to the mayor, and on October 2, 1929, he transmitted to respondents a written communication authorizing them to make an examination of the books and records of the various officers and departments of the city in order to determine its financial situation and also requested them to recommend the installation of a better system of accounting.

On the same day the board of estimate and apportionment of the city, consisting of the mayor, president of the common council, corporation counsel, comptroller and city engineer, convened and unanimously adopted a resolution approving the action of the mayor in employing respondents for the proposed examination at a cost not to exceed $4,000.

Respondents entered upon the performance of their duties and completed the same, with the exception of the preparation of their report, the last of December. Meanwhile, because of the vagaries of politics, the official personnel of the city changed. The political rivals of the mayor and his associates became the masters of the ship. Motivated, no doubt, by the exigencies of politics, the new administration immediately proceeded to condemn the old and to renounce it and all its works and pomps. It made demand upon respondents for all city records in their possession. Respondents requested that they be permitted to retain these documents pending the preparation of their report which was nearing completion. In reply the corporation counsel wrote respondents demanding the immediate return of the papers and at the same time advised them " that the present administration of the City of Cohoes is in no way interested in any examination or report that your associate, Mr. Thomas A. Stack, may have in hand respecting any financial problems that the officials of Cohoes may be confronted with."

Respondents thereupon discontinued the completion of their report and, in accordance with the provisions of the charter, submitted to the comptroller a claim for services for $4,000 and an additional sum of $2,000 for expenses. The claim bore the written approval of the mayor by whose authority the work was done. The claim as presented was audited by the comptroller, but the city declined to pay, and respondents thereupon instituted this action to recover the value of their services.

After a trial jury rendered a verdict in their favor for $4,000 and interest, and the city has appealed from the judgment entered upon that verdict.

The extent of the mayor's authority under the charter of the city is the question for determination. Respondents maintain that section 55 of the Cohoes charter clothes the mayor with ample authority to retain them for the performance of the services which they rendered. The pertinent provisions of that section are:

" § 55. Examination of books and accounts. The mayor shall have authority at all times to examine the books and papers of any officer, employee or department of the city and, as often as he may deem proper, to appoint one or more competent persons to examine, without notice, the accounts of any city officer or department, and the money, securities and property belonging to the city in the possession or charge of any officer or department and to report the result of such examination; and he may administer oaths to witnesses and take affidavits in all cases relating to the affairs of the city and its officers and employees, and he may issue a subpœna

commanding a person to appear and produce books and papers in his possession."

Appellant urges that other sections of the charter, to which we shall refer, are controlling and that respondents have not satisfied their requirements. Section 31 provides that " No appropriation of money shall be made for any purpose except by ordinance specifying each item, the amount thereof, and the department or specific purpose for which the appropriation is made."

Section 99 states that " nor shall any such board or officer expend or contract to spend any money or incur any liability upon or by virtue of an open market order until an order in writing, made in triplicate, is submitted to the comptroller and he shall have certified thereon that unexpended funds, appropriated for that purpose, are available to meet a claim therefor."

Section 110 establishes a board of contract and supply and requires that all contracts shall be advertised and awarded to the lowest bidder.

Section 115 provides: " Power to purchase and contract limited. No person shall have power to make any purchase or contract any debt for which the city shall be liable unless specifically authorized by the provisions of this chapter."

Section 187 is that " No written contract providing for the payment of two hundred and fifty dollars or more, entered into by the city or any of its officers, boards or departments, shall be acted under until there shall be indorsed thereon by the corporation counsel a certificate to the effect that the city officer, board or department, which has executed the same on behalf of the city, had authority and power to make such contract, and that such contract is in proper form and properly executed."

Respondents assert that the sections referred to have no application to the facts in this case and, therefore, constitute no defense to their claim.

A provision similar to section 55 of the Cohoes charter is incorporated in many city charters in this State. A like provision is found in section 56 of the Second Class Cities Law.

In the interpretation of the section of the charter in question it is important to keep before our minds the fundamental principles of statutory construction. The intent of the lawmakers is the soul of the statute. It must prevail over the literal sense and the precise letter of the language employed. A statute should be construed having in mind the nature and reason of the remedy and the object of the statute, in order to give effect to the legislative intent. The powers conferred upon municipal corporations and their officers must be construed with reference to the object of their creation.

Their powers should be construed so as to carry into effect every power clearly intended to be conferred and every power necessary to be implied for the complete exercise of those granted.

The powers expressly granted to the mayor by section 55 of the charter carry with them such other powers as are necessarily implied in or incident to such grants and also those which are indispensable to the attainment and maintenance of the declared objects and purposes of the corporation. This is a very salutary provision and is designed for the protection of the municipality and its inhabitants. The public mischief to be avoided if this provision of the charter is construed so as to support the right of the mayor to make summary investigations of the accounts, moneys, securities and property belonging to the city is at once apparent. Should officers become dishonest or corrupt, the power to investigate summarily is indispensable to the honest administration of municipal government.

The mayor is the chief executive officer of the city and undoubtedly the Legislature conferred extraordinary authority upon him to investigate without notice in order that corrupt municipal officers may be compelled to restore municipal funds which they have wrongfully expended or misapplied or for which they have failed to account.

Appellant's criticism of the section of the charter because it does not restrict the mayor either in the extent of the employment or the expense to be incurred we regard as a misconception of the law. The corporation counsel urges that even if it be held that the mayor has power to investigate under this section, his appointee must serve gratuitously. We do not so construe this statute. True it is there is no express provision in this section for the compensation of those employed by the mayor. This is no insuperable obstacle. The authority to employ necessarily carries with it the authority to pay. The law will imply a liability to pay reasonable compensation to persons rendering services at the direction of the mayor in the discharge of his duties imposed or authorized by law. The power conferred upon the mayor, however, should be exercised conscientiously, in good faith and for a municipal purpose and entirely free from the taint of personal, political or other ulterior bias.

If we should adopt the construction of this section urged by the corporation counsel it would result in rendering it meaningless. If the mayor should desire to investigate the comptroller's office that official could prevent it by refusing to certify pursuant to section 99 of the charter that there were funds available for such purpose. Again if the mayor desired to investigate the affairs of the common

council that body could thwart his efforts by refusing to make the appropriation under section 31 of the charter. In the same way the corporation counsel could prevent any examination of his records by refusing to make the certificate required by section 187 of the charter. In other words, if section 55 is limited by the other sections then the conclusion is irresistible that the mayor has no power whatever to make any investigation. We are not willing to sanction any such absurd construction.

The appellant also urges that respondents have not substantially performed their contract. That they did perform as far as they were permitted to do so is amply sustained by the evidence. Furthermore, the learned trial judge submitted that as a question of fact to the jury and the verdict has definitely determined that respondents did perform. Their work was completely performed except to file their report. As already pointed out, the corporation counsel waived the filing of that document. Appellant cannot now be heard to say that this report was never presented because presentation was waived. (*Amies* v. *Wesnofske*, 255 N. Y. 156; *DeForest R. T. & T. Co.* v. *Triangle R. S. Co.*, 243 id. 283.)

Appellant also contends that it is relieved from all liability to respondents because at the time the obligation was created it was indebted in an amount in excess of the limitation of indebtedness permitted by section 10 of article 8 of the New York State Constitution. Even if it be assumed that the city was indebted beyond the constitutional limitation, the claim of the respondents is not within the intent of the constitutional debt limitation. Their compensation for services rendered is merely a current charge and part of the current expenses of the city. (*O'Reilly* v. *City of Kingston*, 175 App. Div. 207; *Levy* v. *McClellan*, 196 N. Y. 178.)

Many other alleged errors are assigned by appellant for a reversal of this judgment. We have examined them all carefully and find that they are without merit.

The judgment and order appealed from should be affirmed, with costs and disbursements to respondents.

HILL, P. J., and BLISS, J., concur; RHODES, J., dissents, with an opinion, in which McNAMEE, J., concurs; McNAMEE, J., dissents, with an opinion, in which RHODES, J., concurs.

RHODES, J, (dissenting). The learned court below, in his charge to the jury, stated that pursuant to section 55 of the charter of the city of Cohoes, the mayor had authority to enter into a contract with these plaintiffs for an examination of the books and accounts of any and all of the offices and the departments of the city of Cohoes.

It is elemental that the mayor possessed only the power conferred upon him by statute. The only authority thus conferred is contained in said section 55, which gives the mayor authority to make such examination or to appoint one or more *competent* persons thus to examine.

The section does not in express terms empower the mayor to enter into any contract providing for compensation to the person thus appointed. The power to enter into the contract in question must, therefore, be found, if at all, in the implication to be drawn from the authority expressly conferred.

Implied powers are those necessarily or fairly implied or incident to the powers expressly granted, and those which are essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. (See Dillon Mun. Corp. [4th ed.] § 89; *Matter of Locust Avenue*, 93 App. Div. 419; *Schneider* v. *City of Rochester*, 160 N. Y. 165; *Armstrong* v. *Village of Fort Edward*, 159 id. 318; *Mayor, etc., of N. Y.* v. *Sands*, 105 id. 210; *Cain* v. *Warner*, 45 App. Div. 450; *Wakefield* v. *Brophy*, 67 Misc. 298; affd., 144 App. Div. 905; 207 N. Y. 772.

In *Cain* v. *Warner* (*supra*) it was held that the board of police commissioners of the city of Rochester had implied power to employ a police surgeon to render services made necessary by the rules and regulations for the government and discipline of the force, such rules having been adopted pursuant to authority conferred by the charter. In that case the trial court expressly found that the services of the police surgeon were necessary.

In *Wakefield* v. *Brophy* (*supra*) the trustees of the village of Port Chester employed an expert accountant to make an examination of past taxes and assessments and various compilations therefrom, and to devise a new and efficient system of bookkeeping and accounting and for the instruction of various village officers. In a taxpayer's action the Special Term held that the necessity of such employment had not been shown, and granted judgment to the plaintiff restraining the trustees from paying such accountant.

It may be granted that the mayor is the sole judge of whether and when an examination shall be made either by himself or by his appointee, the necessity therefor resting entirely within his discretion. It does not follow, however, that he is thereby clothed with authority to incur financial obligation which may be charged against the municipality. If a proper investigation can be had only by the assistance of hired experts, then such hiring, being necessary to accomplish and effectuate the investigation, would be

within the implied powers incident to the examination. If such an examination could be conducted properly and effectively without hiring accountants, and their employment for compensation were not fairly and reasonably required, then such employment would not be a necessary incident to the examination, and authority so to employ would not be implied from the powers expressly granted.

This is made clearer when we consider that the statute contemplates that the mayor himself may conduct such an examination. The mayor may not be an accountant, and the investigation may not require a specialist; perhaps it may, but that is a fact to be proven. Clearly, the hiring of unnecessary assistants would not be justified from the standpoint of rendering the city liable.

The necessity for such services was, therefore, a vital factor in determining the authority of the mayor to contract for the services and compensation of plaintiffs. Such necessity was neither asserted in the complaint nor on the trial, nor was the question submitted to the jury.

The defendant insisted throughout that the mayor had no authority to make the contract in question, in so far as to render it binding as against the city, and this contention necessarily embraces the proposition that the services were unnecessary and, therefore, not within the implied powers of the mayor. The court charged the jury that " Section 55 of the Cohoes Charter, which purports to give the Mayor authority to make such an agreement as is claimed was here made, contemplates that the persons employed by the Mayor under that section will be paid or compensated." To this the defendant excepted.

Because it has not been determined that the services of plaintiffs were necessary, the plaintiffs' case lacks one of the essential elements required to establish the authority of the mayor to enter into the contract in question.

In passing, attention may be called to the fact that the alleged contract is in the form of a letter whereby he requests plaintiffs to make an examination, and it further states: " In the course of this examination, I desire to have your recommendations as to the installation of a better system of accountancy and financial management, in order that the accounts may be kept and the financial affairs carried on in a manner which shall give to the heads of the department and the Mayor both complete and intelligible reports, and also be of such a nature that the same may be available to and understandable by the citizens of Cohoes at any and all times."

Said section 55 does not expressly authorize the mayor to appoint any one to recommend or provide a system of accountancy and financial management. It seems a far stretch of the imagination

to say that such authorization is implied from the express language of the section permitting the mayor to appoint a person to make an examination.

In this respect the attempted contract seems clearly beyond any express or implied power conferred upon the executive.

For the reasons stated, and in the interests of justice, the judgment should be reversed and a new trial granted, with costs to the appellant to abide the result.

McNAMEE, J., concurs.

McNAMEE, J. (dissenting). The financial condition of the city of Cohoes was investigated by the State Comptroller in his official capacity, and on June 15, 1929, he found and reported that the city was obligated for the payment of debts aggregating more than $500,000 beyond its constitutional capacity to incur debts. The mayor of the city at that time, and for several years immediately prior thereto, was a lawyer of mature years, and in the month of October following he was conducting a campaign for re-election. On the second day of that month the mayor tendered a contract to the plaintiffs, " pursuant to the power and authority conferred " on the mayor of Cohoes by section 55 of its charter, " to examine the books and papers of the office of Comptroller of the City of Cohoes, with a view to a thorough investigation, examination and report of the finances of the City of Cohoes, and all its fiscal affairs; " and to " examine into the books and papers of all other departments of the City of Cohoes in any way relating to its financial condition or management; " and to furnish " recommendations as to the installation of a better system of accountancy and financial management * * * and also be of such a nature that the same may be available to and understandable by the citizens of Cohoes at any and all times." The plaintiffs allege that they accepted this offer and entered upon the work prescribed. Yet the record contains no report, partial report or recommendations made by the plaintiffs, except its letter of October 31, 1929, in which it questions the truth of the report of the State Comptroller, and states the opinion of plaintiffs that the city of Cohoes " is not now and probably has not been indebted beyond the limit imposed " by the Constitution.

Plaintiffs presented their formal and verified bill for " Professional services $4,000," and for " Expenses — Hotel, Traveling, Office, etc., $2,000, as agreed, $6,000." The only item particularized was one for " Examination of accounts for the purpose of determining the financial position of the City of Cohoes, in particular reference to the constitutional debt limit and rendering a report thereon."

The charter of the city of Cohoes (Laws of 1915, chap. 130) prohibits the incurring of debts against the city by any official, except in the ways and for the purposes therein specified. Section 31 forbids an appropriation of money " for any purpose," except by ordinance specifying each item and the amount; section 187 forbids any officer or board to act under any " written contract " for the payment of $250 or more " until there shall be indorsed thereon by the corporation counsel a certificate to the effect that the city officer, board or department which has executed the same on behalf of the city, had authority and power to make such contract; " section 99 is entitled " Contracts and expenditures prohibited," and provides that " nor shall any such board or officer expend or contract to expend any money or incur any liability upon or by virtue of an open market order until an order in writing, made in triplicate, is submitted to the comptroller and he shall have certified thereon that unexpended funds, appropriated for that purpose, are available to meet a claim therefor if incurred; " and section 115 provides that " No person shall have power to make any purchase or contract any debt for which the city shall be liable unless specifically authorized by the provisions of this chapter."

It is after an examination of these statutes, and the facts of the case, that we must consider section 55 under which the mayor assumed to make the contract in question with the plaintiffs. That section gives the mayor authority " to examine the books and papers of any officer, employee or department; " and also " to *appoint* one or more competent persons to examine." And in that connection he may also administer oaths, take affidavits and issue subpoenas. Beyond these, no power is expressly given, nor is any suggested. It makes no reference to the various sections that provide for the creation of obligations binding on the city; neither does it contain any language that excludes any of the positive prohibitions against the incurring of debts in behalf of the city. The statute gives to the mayor, personally or by his appointee, very broad powers of investigation. He is at liberty to enter any office in the city, and to examine every official and everything in it. He is free to appoint any other city official or a private person to accompany him, or to investigate in his behalf, as well as to administer oaths and issue subpoenas. Indeed, it would be difficult to conceive of a greater scope of power to make investigation than that conferred by section 55, despite the fact that it contains no provision for the making of contracts or the spending of the city's money.

There is not the slightest proof in the record that any sudden emergency had arisen, or that any other officer of the city was

guilty of any corruption which required extraordinary action by the mayor; neither did it appear that there was collusion or subterfuge on the part of others which called for exposure or correction. There was no proof that the mayor himself was incompetent or unable to make such investigation as was within his power and he deemed proper; nor was there proof that no competent and willing officer or other person would accept his appointment to that service. Neither did he seek the lawful appropriation of funds for such a purpose.

The city, of course, was then in a regrettable financial condition; but this, culminating at the end of the mayor's terms of office, was a notorious fact, to the extent of being the subject of newspaper account throughout the State, long before the alleged contract was proposed, and as was made evident by the official report of the State Comptroller in the June preceding. Even the State Legislature, a few months later, intervened by the enactment of special laws to protect the rights of creditors of the city, and to drastically limit the power of the city to borrow money except for the purpose of discharging debts already incurred (Laws of 1930, chaps. 80 and 555). Not only was there no proof of necessity for the questioned action on the part of the mayor, or for the services of the plaintiffs, but it is clear, as it must have been clear then to a reasonable person, that the proposed services of the plaintiffs, if they were in fact rendered, were a work of supererogation, and were useless.

Under section 55 the mayor, beyond investigation, proposed a contract with the plaintiffs requiring " recommendations as to the installation of a better system of accountancy and financial management," so that the bookkeeping of the city " may be available to and understandable by the citizens of Cohoes at any and all times." It is idle to contend that a contract for the hiring of such services is comprehended within the terms of the statute, any more than the statute contemplates a hiring by the mayor to recommend new and better streets, new and better fire apparatus, or new and better police equipment.

The judgment and order should be reversed, and a new trial granted.

RHODES, J., concurs.

Judgment and order affirmed, with costs.