In the Matter of the Application of MAX L. REBEN REALTY CORPORATION, Successor in Interest to CAROLINE H. SCHOONMAKER, Petitioner, Respondent, for a Writ of Certiorari against COMMON COUNCIL OF THE CITY OF KINGSTON and WILLIAM B. MARTIN, as Assessor, etc., Respondents, Appellants.

Third Department, April 30, 1941.

*John M. Cashin, Corporation Counsel,* attorney, for the respondents-appellants.

*Fowler & Fowler* [*Joseph M. Fowler* of counsel], for the petitioner-respondent.

HILL, P. J. The city of Kingston has appealed from an order and judgment in a certiorari proceeding to review a special assessment levied in connection with the building of sewers. The judgment determined " that the special sewer assessment against the real property of the petitioner and known on the special assessment sewer map as lots numbered 1, 2, 3, 4, 5, 6, 10, 12 on Stephan Street, and lot No. 39 on said map on Clifton Avenue were based on an erroneous principle of law in that such assessment did not contemplate all the lands within the district or region of the proposed sewer, particularly such part of the sewers as was laid in Shufeldt Street; that the assessment levied against the lots and properties of the petitioner was illegal and void in not contemplating the Shufeldt lots and is now vacated, and it is further ordered " that the assessments heretofore paid be refunded. The referee found the acts of the common council and board of public works to be illegal because " The combining of the two separate and independent sewers under one assessment was without legal authority or right." However, the judgment contains no determination founded on that finding. The appeal is also from two intermediate orders, one of October 4, 1935, which permitted the substitution of respondent Reben Realty Corporation as relator, the other which denied appellants' motion to vacate the former. The common council contracted with one Shufeldt for premises through which the sewer was to be constructed to its outlet, the city receiving the premises upon which a street was to be laid out and under which the sewer ran, and in return Shufeldt's unimproved and undeveloped property was not included in the benefit zone or assessed a proportionate share of the cost of the sewer. These legislative or executive acts were determined to be illegal. Another

issue raised was that the building of the sewer was begun without authority because of the failure of the common council or the board of public works to adopt the necessary resolutions. The referee refused to find that the assessment against relator's predecessor was confiscatory or unlawful, but did find, " The failure to include lands owned by George A. Shufeldt was illegal and renders the assessment void."

The city, in 1922, contemplated the construction of a sanitary sewer to accommodate the area adjacent to Stephan street and Clifton avenue. The former runs in a general easterly and westerly direction, its eastern terminus being Clifton avenue. The portion of the avenue sought to be served extends southerly from the intersection. This portion of the city is not level, and when the sewer had been built from the westerly end of Stephan street easterly to within one hundred and forty feet of Clifton avenue, mostly in rock, the trench was necessarily fifteen feet deep in order to permit the runoff westerly under Stephan street. It was determined that the sewer in Clifton avenue should start from the corner of Stephan street, run southerly, then through unimproved and vacant land owned by Shufeldt to the outlet. This change by the council was made following a petition signed by a large number of the residents and property owners in the area. It is not questioned that the plan adopted was preferable to having the sewer in the two streets constructed as a unit. The judgment and order appealed from deal with and purport to correct claimed legal errors of the common council and board of public works.

The chronology of events connected with this appeal is not without significance. Construction of the sewer began in 1924. It was completed before March 26, 1926, and the bureau of public works so notified the common council. The latter body, by resolution, directed the assessor of the city to prepare an assessment roll of benefits upon the locality for seventy-five per cent of the total cost, the remaining twenty-five per cent to be paid by the city at large. The assessment was completed and on May 17, 1926, a notice was published that the roll might be seen by persons interested until June first, when the assessor would attend at the City Hall from nine in the morning until four in the afternoon to hear persons who deemed themselves aggrieved. The assessment was approved by the common council and transmitted to the mayor who approved it on June third. The order for the writ of certiorari was granted June twelfth following, and the writ made returnable on June twenty-sixth. No further proceedings were had until October 4, 1935, when the Max L. Reben Realty Corporation was permitted to continue the proceedings as relator.

Caroline H. Schoonmaker, the original relator, had conveyed the real property to the Reben Realty Corporation. The deed contained the provision that the conveyance was made " subject to all assessments for sewers."

Section 150 of the Charter of the city directs: " The board shall deliver to the common council a statement of its determination as to such special assessment, and of the object therefor, by filing the same with the city clerk. The common council shall direct the assessor to forthwith proceed to determine the district within which the property benefited by said improvement is located; and cause the city engineer to make the necessary map therefor; and to cause the assessor to make a certificate of such special assessment, entering thereon the names of the owners where ascertainable, and where the parcels are unoccupied or owned by nonresidents or the names of the owners cannot be ascertained, the lot, street or map number shall be deemed sufficient. He shall make a just and equitable assessment of the costs and expenses of such improvement as audited by the board against the owners or occupants of the land deemed to be benefited, assessing each parcel in proportion to the benefit which in his judgment has been derived from said improvement, and shall enter in such certificate a brief description of the parcel assessed and the sum assessed against it." The common council of the city had contracted to acquire the Shufeldt land for a street under which one branch of the sewer was to be built to the point of discharge. It was agreed that the Shufeldt properties adjacent to this street should pay no local assessment for the sewer. The common council, in carrying out this agreement, could, as it did, " direct the assessor " to omit the Shufeldt property from the " district " and " cause the city engineer " to exclude the property from his map. The result would have been the same had the common council directed the assessor to include the Shufeldt land in " the district within which the property benefited by said improvement is located " and caused the board of public works to include the Shufeldt assessment in the cost of the sewer and thereafter to refund to him the amount of his assessment. " There can be no doubt that ordinarily the courts of this State will not by writ or order of certiorari review action taken by a local governmental body in fixing an area of assessment pursuant to authority delegated to it by the Legislature." (*Matter of Long Island R. R. Co.* v. *Hylan*, 240 N. Y. 199, 203.) In the opinion in the *Long Island* case the *dicta* clearly demonstrates that the board of estimate and apportionment acted erroneously, but it was decided that the application for the order of certiorari should be denied and the order granting the writ reversed.

The common council undertook the single project of providing sewer facilities for Clifton avenue and Stephan street which runs westerly therefrom. Physical conditions, including the grade of the streets and the underlying rock strata, made it wise that the line serving Clifton avenue should drain in a different direction than the line under Stephan street. To accomplish this, the common council contracted with Shufeldt for land through which the sewer was to be built to its outlet. The projected laying of the street through the Shufeldt land, and the change of plan in connection with the construction of the sewers were legislative or executive acts. It may not be determined in this proceeding whether it was legal and within the power of the local legislature to contract that sewer assessments would not be levied against Shufeldt on account of lands adjacent to the proposed street under which the sewer from Clifton avenue ran. " Though the courts will not review the action of a public body which has no judicial function, they will give no validity to the attempted action, whatever may be its character, of any public body acting without jurisdiction." (*Matter of Long Island R. R. Co.* v. *Hylan, supra,* 209.) In a plenary action brought by or against a city, if reliance is placed upon an invalid act emanating from its council or other board acting in a legislative capacity, the act relied upon would furnish no more authority or support than an unconstitutional act of the Legislature. (*Matter of Long Island R. R. Co.* v. *Hylan, supra; People ex rel. Trustees of Village of Jamaica* v. *Board of Supervisors,* 131 N. Y. 468; *Matter of Neddo* v. *Schrade,* 270 id. 97; *People ex rel. Toms* v. *Board of Supervisors,* 199 id. 150; *People ex rel. Schick* v. *Marvin,* 249 App. Div. 293; *Matter of Fisenne* v. *Bay Ridge Dist. Local Board,* 250 id. 460.)

The portion of the judgment which directs the repayment of taxes by the city to all those who have already paid is not within the jurisdiction of the court. In certiorari, damages may be awarded only to the petitioner. (Civ. Prac. Act, § 1300.) When an illegal tax has been paid, a refund is not always directed. (*People ex rel. German-American Bank* v. *Purdy,* 207 N. Y. 758.) Neither the findings nor the judgment based thereon review or are concerned with the quasi-judicial acts of the assessor, and at this late date it is questionable whether it would be proper to permit such a review. (*People ex rel. Gleason* v. *Purdy,* 223 N. Y. 88; *People ex rel. Hoesterey* v. *Taylor,* 239 id. 626.) Judge POUND, in the *Gleason* opinion, wrote: " If the question had been raised, the court had power to correct by amendment all defects in matters of procedure and award the appropriate relief. The Code of Civil Procedure, section 2148-a, in effect April 7, 1915, has somewhat liberalized

the strict rules on this point." The section of the Code of Civil Procedure cited is now section 111 of the Civil Practice Act. The authorities cited by the petitioner do not sustain the judgment. *McKechnie Brewing Co.* v. *Trustees* (15 App. Div. 139; affd., 162 N. Y. 631), *Hassen* v. *City of Rochester* (65 id. 516) and *Van Deventer* v. *Long Island City* (139 id. 133) were actions and not certiorari proceedings and were brought to cancel assessments for illegality or to remove a cloud from the title to real property. *People ex rel. Connelly* v. *Reis* (109 App. Div. 748) and *D. & H. Canal Co.* v. *City of Buffalo* (39 id. 333) were judgments in proceedings in certiorari involving inequality of assessment. *People ex rel. O'Reilly* v. *Common Council* (189 N. Y. 66) annulled an assessment in a certiorari proceeding because of illegal acts of the assessor which, it is true, were approved and directed by the common council. The acts, however, were those of the assessor and quasi-judicial.

This judgment in certiorari determining that legislative acts are illegal should be reversed, the writ of certiorari quashed, and the petition therefor dismissed. The order permitting the substitution of the present relator should be reversed upon the ground of laches. A court has jurisdiction to continue a proceeding at law; however, unreasonable delay requires a refusal. (*Lyon* v. *Park*, 111 N. Y. 350; *Mason* v. *Sanford*, 137 id. 497; *Pringle* v. *Long Island R. R. Co.*, 157 id. 100; *Hale* v. *Shannon*, 58 App. Div. 247.)

CRAPSER and FOSTER, JJ., concur; BLISS, J., dissents in an opinion; SCHENCK, J., dissents and votes to affirm.

BLISS, J. (dissenting in part). I concur for reversal but not upon the ground of the laches of the respondent in the making of the motion for substitution. While the respondent was dilatory on such motion, nevertheless, the then corporation counsel for the city did not oppose the granting of the order of substitution and no prejudice of any sort to the city, by reason of the delay, was shown. When the present corporation counsel moved to vacate the order of substitution, again the laches of the respondent was not raised and no prejudice shown. Indeed, the only question of laches then before the Special Term was that of the city in moving to vacate. There are no facts appearing in this record which warrant a reversal on the ground of the laches of the respondent and the appellants do not now raise the issue of laches in their brief. Any prejudice to the city, by reason of the claimed laches of the respondent, must be wholly assumed for there is no proof of it.

I concur with the majority that the judgment itself should be reversed in so far as it vacated the assessments in question. The

only harm done to this respondent by these assessments is that they are too high. It must be conceded that the respondent's property was properly assessable in some amount for these special improvements. The judgment below relieved the property from any assessment. The decision about to be made by this court goes to the opposite extreme and makes the respondent pay an assessment which the majority opinion concedes to be erroneous. I agree that the assessment as finally made and confirmed was incorrect because it omitted the Shufeldt property, but that is no reason for now compelling the respondent to pay such erroneous assessment any more than it was a reason for vacating the assessment entirely. What should be done is to reverse the judgment in so far as it vacated assessments and ordered repayment of the taxes already paid, and remit the matter to the assessor of the city of Kingston for a proper assessment. There is ample authority for the remission of this matter to the city authorities for a proper reassessment. (Civ. Prac. Act, § 1300; Tax Law, art. 13; *People ex rel. Manhattan R. Co.* v. *Barker*, 165 N. Y. 305; *People ex rel. Consolidated Gas Co.* v. *Feitner*, 78 App. Div. 313.)

I, therefore, vote to reverse the final order and judgment upon the law and facts in so far as they vacated the assessment and ordered repayment, and to remit the proceedings to the assessor and common council of the city of Kingston for a proper reassessment.

Judgment reversed on the law and facts, with costs, and petition dismissed.

The court reverses the following findings of fact in the referee's decision:

Nos. 1, 6, 7, 10, 11 and 12.

Conclusions of law disapproved.

Also findings of fact made by the referee and contained in petitioner-respondent's requests, as follows:

Nos. 17, 21, 22, 23, 28 as immaterial, and 31; and conclusions of law as found by the referee and contained in the petitioner-respondent's proposed findings are also disapproved.